## J. T. BROOKS, Appellant, v. J. R. JONES et ux.

**Fraudulent Conveyances:** STATUTE OF LIMITATIONS: *Notice by recording.* Where it appears that real estate held by a wife was purchased with her husband's money, and that the deed to the wife had been recorded more than five years before, a suit to submit such property to the payment of the husband's debts cannot be maintained, as the record gave notice of her title.

EVIDENCE. A mortgagor permitted the mortgaged property to be sold for taxes. The certificate was issued to a third person, who transferred it to a son of the mortgagor, who was a young man with no income but his earnings. The mortgagor subsequently conveyed the property to the son. *Held,* that the property could be subjected to the debts of the mortgagor, as the tax sale and conveyance were in fraud of his creditors.

*To relative.* A mortgage given by persons in failing circumstances to secure an existing indebtedness and a loan is not fraudulent as to the grantor's creditors because given to a relative.

INNOCENT PURCHASER. Where mortgaged property is sold for taxes for the purpose of defrauding the mortgagor's creditors, and is purchased by a son of the mortgagor who sells it to a third person, who was an innocent purchaser for value, the property so purchased cannot be subjected to the mortgagor's debts.

*On rehearing.* Where a debtor permits property to be sold for taxes, the purchaser thereof, acting in good faith without knowledge of any intent of such debtor to defraud his creditors by such sale, a vendee of such purchaser is entitled to the property as against the creditors, as title was lost to them by the tax sale.

Consent to Cancel Mortgage: AGREEMENT CONSTRUED. Plaintiff held
a judgment against defendant, part of which was secured by
1   mortgage. Afterwards the parties had a settlement, by notes
and cash, and the judgment was released. Judgment was there-
after obtained by plaintiff on the notes given on the settlement,
2   but 'the mortgage indebtedness was not treated as distinct from
the other indebtedness after rendition of the first judgment.
Defendant testified that it was agreed that the mortgage should
be satisfied, which plaintiff denied. *Held*, sufficient to show an
agreement to cancel the mortgage, and that no recovery could
be had thereunder.

Payment and Credits: EVIDENCE. Defendant, in 1876, turned over
to plaintiff, to apply on an indebtedness to him, notes and
claims to the amount of $1,890.04. In a suit instituted by plain-
3   tiff in 1894, defendant claimed, for the first time, that he had
received no credit therefor, and plaintiff claimed that credit had
been given on other notes. *Held*, sufficient to show that defend-
ant had received his proper credits.

*Appeal from Kossuth District Court.*—HON. LOT THOMAS,
Judge.

FRIDAY, APRIL 13, 1900.

WE avail ourselves of the following from the statement
of the case by appellant's counsel, which is substantially
correct, and sufficient for the purposes of the questions to
be considered "The object of this suit is (1) to fore-
1   close a mortgage; (2) to subject property to the
satisfaction of judgments. The plaintiff, Joshua
Twing Brooks, in the later sixties and subsequently, was
director of the Aetna Manufacturing Company of Salem,
Ohio, and also president of the Farmers' National Bank
of Salem, Ohio. The Aetna Manufacturing Company was
engaged in the manufacture of agricultural implements
until 1872, when it made an assignment for the benefit of
creditors to Lucien L. Gilbert. The Aetna Manufacturing
Company borrowed large amounts of the Farmers' National
Bank, and discounted to the bank large amounts of paper.
About the year 1869 the plaintiff executed to the bank his
personal bond of indemnity, guarantying the bank against

any loss from loans or discounts to the Aetna Manufacturing Company. Among the customers of this company was. one Ransom Bartle, of Independence, Iowa, who had given a large amount of paper to the Aetna Company, and which the Aetna Company, in turn, discounted to the bank. In 1872 the bank held $15,000 to $18,000 of Bartle's paper, guarantied by J. T. Brooks. The defendant J. R. Jones, for a few years previous to 1871, was living at Jesup, Iowa. About 1871 or 1872 he moved to Algona. Jones was a customer of Bartle, and Bartle had a large amount of Jones' paper, dated in the year 1869, which he had discounted at the Aetna Company, and which it had discounted to the bank. About September 5, 1872, Jones, Bartle, and Gilbert met at Ft. Dodge, where Jones renewed his paper, and Bartle delivered it to Gilbert, for the bank, and in part payment of his notes to the Aetna Manufacturing Company. The notes of J. R. Jones, dated at that time, amounted to $5,858.78. The bank had also become the owner of considerable paper indorsed by J. R. Jones. Among the notes given by Jones in September, 1872, was one for $1,263.52, dated September 3, 1872, and one for $1,300, dated September 1, 1872. On January 23, 1873, the defendants J. R. Jones and Flora A. Jones, his wife, executed to the Farmers' National Bank their mortgage on lot 5 in block 22 of Algona to secure these two notes. Mr. Brooks afterwards settled with the bank under his guaranty, and this mortgage, together with all the Jones papers, was turned over to him. The note for $1,300 was paid Mr. Jones. The note for $1,263.52 was never paid, and it is to recover the indebtedness represented by that note, and to foreclose the mortgage referred to, that this suit was brought. At the time the mortgage was given, there were certain unpaid judgments existing against the defendant J. R. Jones. The Jones notes were given to E. B. Soper for collection. Because of these prior judgments, Mr. Soper did not think it advisable to foreclose the mortgage until the lien of the

judgments should expire, and in 1879 he commenced personal action to recover the amount of this note of $1,263.52, together with other notes, which resulted in the rendition of a judgment in May, 1880, for the full amount claimed, namely, $5,378.18. Nothing was ever paid upon this judgment. In October, 1888, the plaintiff, Brooks, and the defendant Jones made a settlement of this judgment, whereby the plaintiff received $50 in cash, and $3,950 in the personal notes of J. R. Jones, without interest, 79 in number, for $50 each, maturing at the rate of one a month. Nine of these notes, only, were paid. In October, 1894, judgment was recovered upon 59 of them, amounting to $3,385.12; and in 1896 judgment was recovered upon the remaining 11, amounting to $608.40. As a defense to the foreclosure, the defendant sets up the claim that the plaintiff orally agreed to cancel the mortgage at the time of the settlement in 1888, and that the defendant delivered to the plaintiff in 1876 a large number of notes, for which, by mistake, he has received no credit. The court below found that, by reason of the settlement and compromise in 1888, and the discharge of the judgment rendered in May, 1880, the said mortgage to the Farmers' National Bank was discharged, and thereupon dismissed the first count of plaintiff's petition. Said court also found against the plaintiff on all the issues joined on his creditors' bill, except as to lots 5 and 6 in block 42 Algona, and from these adverse rulings the plaintiff appeals." The issues and facts involved in the creditors' bill will appear further on.—*Modified.*

Soper, Allen & Alexander, E. V. Swetting, and E. A. Morling for appellant.

Clarke & Cohenour and Sullivan & McMahon for appellees.

GIVEN, J.—I. The transactions involved are numerous and complicated, the evidence is voluminous, and the record, though abstracted with care, is large. We will not

discuss the evidence in detail, but state our conclusions on
the issues involved, with brief reference to the more import-
ant and controlling facts as shown by the pleadings and evi-
dence.    The mortgage under consideration secured two
notes, one of which was paid, and the other put into judg-
ment with other notes in May, 1880, in an action at law.
In October, 1888, plaintiff and defendant J. R. Jones made
a settlement whereby plaintiff received on account of this
judgment $50 in cash and 79 $50 notes of Jones, and en-
tered on the record of the judgment, "Full satisfaction of
the judgment, interest, and costs."   Nine of said $50 notes
were paid, and plaintiff recovered judgment against defend-
ant J. R. Jones on the balance for $3,993.52.    Plaintiff's
claim is that said mortgage was never canceled or satisfied,
and that he is entitled to have it foreclosed as to so much of
this last judgment as is based upon the note for $1,263.52
secured by the mortgage.    Defendant J. R. Jones claims
that it was agreed at the time of the settlement, in 1888,
that all liens, including said mortgage, which plaintiff held
against him, were to be canceled, as a part of the terms of
settlement, and that the satisfaction of the judgment that
included the mortgage note operated as a cancellation of the
mortgage.   It is evident that at the time of this settlement,
in 1888, Mr. Jones was embarrassed in his business; that
said judgment was a cloud upon his credit, which he was
anxious to remove; and that Mr. Brooks was so kindly and
liberally disposed to aid him that he enterer satisfaction of
the judgment for $5,378.18, interests and costs in considera-
tion of the $50 cash and the $50 notes, without interest ag-
gregating only $4,000.   Mr. Brooks denies that the mortgage
was mentioned in their settlement, or that it was ever agreed
that it should be canceled or released, while Mr. Jones says
that it was agreed "that Mr. Brooks would cancel every evi-
dence of indebtedness in connection with the whole transac-
tion."   Unless the satisfaction of the judgment operated as
a satisfaction of the mortgage, it remained as much a cloud
upon Mr. Jones' credit as if the judgment had remained

unsatisfied. In view of the evident purpose of the parties, and of all the facts attending the transaction, we think it fairly appears that it was understood that the mortgage was to be regarded as canceled. The fact that the mortgage debt was blended with others in the first judgment, in the discount allowed in taking the $50 notes, and in the last judgment, so as to render it difficult, if not impossible, to say how much of the last judgment is for the mortgage debt, confirms us in the conclusion that it was agreed that the mortgage should be regarded as canceled. If it were intended that it should remain as security, it seems probable that the debt for which it was to stand would have been separately evidenced. We are satisfied that the parties acted upon the supposition that the satisfaction of the judgment operated as a satisfaction of the mortgage, and hence a satisfaction of the mortgage on the record was not insisted upon or made. Mr. Jones did allow property to go to tax sale, so as to clear the title of this mortgage, and it is insisted that this shows that there was not an agreement that the mortgage should be canceled. Surely his conduct in this respect does tend to so show, but it is explained by the fact that the mortgage stood open upon the record, a menace to Jones' credit, and possibly because Jones had come to doubt whether the satisfaction of the judgment operated as a satisfaction of the mortgage. It is insisted that this agreement, if made, was in parol, and therefore void. It was in parol, but the plaintiff holds, and is now seeking to enforce in this action, the consideration which he received for that agreement, and therefore should not be heard to claim that the agreement is void because parol. Concluding, as we do, that the mortgage should be held as satisfied under the agreement, we do not consider the question whether the satisfaction of the judgment operated as a satisfaction of the mortgage. It follows from what we have said that the first count of plaintiff's petition was property dismissed.

II.   Both parties admit that on August 4, 1876, J. R. Jones turned over to the plaintiff notes and claims aggregating $1,590.04, to be applied on the indebtedness of Mr. Jones. Mr. Jones contends that this credit was to be applied upon the notes secured by the mortgage; that by oversight and mistake it was omitted to give him such credit on said notes, or otherwise,—wherefore he insists that said mortgage note for $1,263.52 has been fully paid. The plaintiff claims that this credit was to be, and was, applied in payment of two certain other notes of Mr. Jones; and we think it fairly appears it was so agreed, and that they were so applied. It would certainly be strange that a credit for so large a sum should be overlooked for so many years, especially in view of what followed. If Mr. Jones had thus paid that mortgage note, he would surely have insisted upon the cancellation of the mortgage. He would not have allowed judgment to be taken against him on the mortgage note, nor have given his notes in satisfaction of that judgment, and permitted judgment to be taken on these notes, without asserting and insisting upon this credit, if it was to be given as claimed by him. We do not think that Mr. Jones has shown himself entitled to any relief on account of the transaction, and we have no doubt that he is indebted to plaintiff in the full sum of the two judgments rendered on the $50 notes. Having reached this conclusion, we need not determine whether the fact of judgment having been rendered on this note estops Mr. Jones from now asserting this claim.

III.   Plaintiff's further causes of action are in the nature of creditors' bills against Flora A. Jones and Wilfried P. Jones, to subject certain real estate standing in their names, respectively, to the payment of his judgments. Plaintiff's claim is that these properties were purchased and paid for by J. R. Jones, and that the title was placed in the name of said defendants (his wife and son) for the purpose of placing the same beyond the reach of the creditors of J. R.

Jones. We first inquire as to the property standing in the name of Mrs. Jones, namely, lots 3 and 4 in block 70, and lot 6 in block 22, original town plat of Algona, Iowa. Said lot 6 was conveyed to Mrs. Jones by Asa C. Call, for the recited sum of $900, on June 8, 1877, and the deed filed for record March 23, 1887. Said lot 3 was conveyed to her by William Millis, for the recited consideration of $200, May 10, 1873, and the deed filed for record August 25, 1873. Said lot 4 was conveyed to her by John A. Millis, for the recited consideration of $1,000, April 23, 1873, and said deed filed for record August 25, 1873. The claim of the plaintiff that these lots were paid for by the defendan' J. R. Jones seems to be well sustained. There is some pretense that Mrs. Jones had some money that went into these lots, but that claim is not well' founded. It will be observed that the deeds to Mrs. Jones for said lots 3 and 4 have been on record since August, 1873, and the deed to her for said lot 6 since March, 1887. So far as appears, Mrs. Jones has been in the occupancy of these lots ever since the conveyances of them to her. The court below sustained the defendants' plea of the bar of the statute of limitations as to this cause of action, and dismissed plaintiff's as to said lots. This holding must be sustained, as more than 20 years elapsed between the recording of the deeds to lots 3 and 4, block 70, and the commencement of the action nearly 8 years between the recording of the deed to lot 6 and the commencement of this action. By the recording of these deeds, the plaintiff had record notice of Mrs. Jones' title, and there is no allegation that the fraud alleged was not discovered until 5 years from the commencement of this action. We may add that no reason appears why, at the time these deeds were made to Mrs. Jones, Mr. Jones might not have then rightfully given the property to her, without intending any fraud upon his creditors.

IV. We now inquire as to the property claimed by W. P. Jones, namely, lot 5 in block 22, and lots 3 and 4 in

block 51, original plat of Algona. The mortgage to the Farmers' National Bank was upon said lot 5. It appears that said lot went to tax sale, and that a treasurer's certificate was issued to George C. Call on the third day of November, 1893, and the defendant W. P. Jones acquired this tax title, and thereafter received a further conveyance of said lot from the defendant J. R. Jones, and later conveyed the west one-third of said lot 5 to the defendant E. J. Gilmore, who, we find, was an innocent *bona fide* purchaser for value. We cannot doubt under the evidence even of J. R. Jones himself, that he purposely permitted this lot 5 to go to tax sale for the purpose of removing the cloud of the plaintiff's mortgage on his title, and that the purchase by Call, the transfer of the tax title to W. P. Jones and the subsequent conveyance by J. R. Jones to him, were for the purpose of placing this lot beyond the reach of the creditors of J. R. Jones. W. P. Jones was a young man, with no other income than his limited earnings, and fails to show satisfactorily that he was able to, and did in good faith, buy the lots that he is now claiming. As to lots 3 and 4 in block 51, it does not appear that J. R. Jones ever had title thereto, and we do not understand the plaintiff as now claiming a right to subject said lots to his judgments. The lower court found in favor of W. P. Jones as to all three of these lots, and decreed accordingly, but we think the decree should be modified so far as to subject the east two-thirds of said lot 5 to the payment of the plaintiff's judgment. Mr. Gilmore, having purchased the other third in good faith and for its value, is entitled to the protection afforded him in the decree.

V.   On January 2, 1894, Mrs. Jones and her husband executed a mortgage on said lot 6, block 22, and on lots 5 and 6, block 42, in Algona, to J. W. Dickinson, to secure a note of $5,000, subject to a mortgage of $1,000 to one S. C. Spear. The plaintiff contends that this mortgage is "a sham and a fraud, and does not represent any real indebted-

ness, and that the same was made for the purpose of placing the defendant's property beyond the reach of his creditors." The plaintiff has entirely failed to sustain this charge. It is true that Mr. Dickinson is a relative of the defendants, but this alone is not sufficient reason for adjudging the mortgage to be fruadulent. It appears that Mr. Dickinson was a man of means, and disposed to aid his relatives, Mr. and Mrs. Jones. It appears, without contradiction, that this note and mortgage were given in consideration of prior loans of money, and of an additional loan of $1,000 made at the time of their execution. The decree of the lower court sustaining this mortgage is correct. It follows from what we have said that the decree of the lower court is affirmed in all particulars, except as to the east two-thirds of lot 5 in block 22, which we hold should be subject to the payment of the plaintiff's judgments; appellant to pay three-fourths, and appellees J. R. Jones and W. P. Jones one-fourth, of the costs.—MODIFIED and AFFIRMED.

WEDNESDAY, MAY 29, 1901.

ON REHEARING.—*Affirmed.*

WATERMAN, J.—We granted a rehearing in this case upon the point involved in the fourth division of the foregoing opinion. On the original submission we held the east two-thirds of lot 5 in block 22 were subject to plaintiff's judgment. A further examination leads us to believe this holding to be incorrect. Lot 5 was sold for taxes to George C. Call. The testimony, as we now find, does not justify the inference that this purchase by Call was made to cover the property from creditors of J. R. Jones. Whatever Jones' intent was in permitting it to go to tax sale, if it can be said any intent is disclosed, we cannot find any evidence to show that Call was privy to it. The latter ob-

tained a deed to the lot, and thus held an independent title. This title he was at liberty to convey to any person he chose.. W. P. Jones owed nothing to plaintiff. He purchased the lot from Call. There is evidence tending to show that he paid a consideration from his own funds; but, if he paid nothing, it would not affect his rights. Call had a good title, and could have made a gift of it to W. P. Jones had he seen fit to do so. Nor does it make any difference what the purpose of W. P. Jones was in making the purchase. But be it understood we do not say the testimony shows this to have been fraudulent. A bad intent affords in law no ground for an action, unless it occasions an injury. 1 Addison Torts, 6. The title to this property was lost to the creditors of J. R. Jones by the tax sale to Call. In no way could they have been injured by its transfer to W. P. Jones. For the reason stated, we think W. P. Jones entitled to the protection given him by the trial court against the claim of plaintiff to the east two-thirds of lot 5. This sets aside our former modification of the judgment. The original order as to costs will, of course, have to be changed to taxing them all to appellant.— AFFIRMED.